UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**Nkiruka G. Udodi**

**Plaintiff**

**Civil Action
No. 19-cv-2409**

**v.**

**Everett Stern, Tactical Rabbit, Inc.
Defendants.**

MOTION TO STRIKE DEFENDANT'S REPLY BRIEF
OR IN THE ALTERNATIVE FOR PERMISSION TO SUBMIT A SURREPLY

COMES NOW, Plaintiff, by and through her attorney, Christian C. Nduka, Esq. and hereby

moves this Honorable Court for an order striking the Defendants' reply brief *sub judice*. This

request to strike is the least of what could be asked when a party in a litigation ignores the rules

of the court. Here, the Defendants attempts to abrogate the rules of this court that mandates a

filer of a reply or sur-reply to undertake such within fourteen (14) days of the date the motion in

which a reply is addressing is filed. See Local Rule 7©. See also Policies and Procedures,

March 2019 (civil Matters) @10. ("Reply and surreply Briefs:" If necessary, reply briefs for

motions for summary judgment may be filed without leave of Court. However, leave of Court is

required to file surreply briefs regarding motions for summary judgment. ***For all other motions,***

***reply and surreply briefs may only be filed with leave of court......When permitted, reply and***

***surreply briefs are limited to (10) pages each and should be filed within fourteen (14) days of***

***the filing of the document to which it replies.***") See attached.

Defendants filed their reply brief on August 16, 2019 (See docket Entry #8) in reply to

Plaintiff's motion filed on August 1, 2019 (See docket Entry #6.) This is past the mandatory

fourteen (14) days required by the local rules, policies and procedures. So, as it stands,

Defendants' reply brief was filed outside the time limitation, and without leave of court.

1

Accordingly, this Court must strike it to conform with the integrity of the established rules of the court.

Alternatively, this Court should grant Plaintiff's permission to file a surreply to Defendants' reply. This request comes on the hills of the new revelations Defendants' attorney's which may well make the Defendants' attorney a material witness to some of the allegations in Plaintiff's Complaint. These revelations would be addressed in the surreply brief that will accompany this motion as an exhibit. Granting this request for surreply is not only quite necessary because of these new revelations, but failing to address the revelations in a surreply brief could cause real harm to Plaintiff's case. ***See Ennin v. CHN Industrial America, LLC,*** NO, 17-2270(7th Circuit, decided December 27, 2017) (Failure to file a surreply constituted waiver in future litigation).

Wherefore, Plaintiff respectfully prays.

Respectfully Submitted:

Christian C. Nduka, Esq.
Attorney for the Plaintiff
1233 St James St, Philadelphia, PA 19107

Dated: August 24, 2019.

# EXHIBIT 1.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

Nkiruka G. Udodi
                                **Plaintiff**

                                                **Civil Action**
                                                **No. 19-cv-2409**

                    **v.**

Everett Stern, Tactical Rabbit, Inc.
                                **Defendants.**

### PLAINTIFF'S SURREPLY TO DEFENDANTS' REPLY BRIEF

Defendants in their reply, for the most part attempted to muddle the water and

mislead. The issues raised in the Reply brief will be addressed point by point, as follows.

**I.      Plaintiff did not Admit that Defendants Showed her the Appeal Letter in**
         **Advance and Plaintiff did not "Love" it.**

Defendants' attorney took the email Plaintiff wrote to Defendants and attempted to edit

it to suit his purpose in the reply brief. However, it should be brought to this Court's attention

that no one should try to mislead it. In an effort to avoid repeating any claims or arguments that

have already been put before this Court, Plaintiff would only remind the court that the claim for

breach of contract addressed more malfeasance than just the issue of the "appeal letter" in

question here. As such, even if this Court were to agree that the "appeal letter" was somehow

shown to Plaintiff before mailing, there are still arguments supporting the claim of breach of

contract, contrary to the way Defendants seem to make the "appeal letter" issue carry all the

arguments of breach of contract. In any event, since Defendants failed to attack the rest of the

1

arguments pertaining to breach of contract, it should be assumed admitted, and under this Court's advisement. The email in question which is attached, and would be re-attached herewith, started as follows: *"Hi, Nicely written!! I have a few corrections."*  See email marked as **Exh. 2**. Defendants' attorney artfully redacted the letter by blatantly removing the second sentence.  The second sentence clearly shows that she has not approved the appeal letter to proceed at the time she wrote the letter.

In the email, Plaintiff demanded for a few corrections to be made, and there was no indication anywhere that those corrections were ever made to Plaintiff's satisfaction before the appeal letter was mailed.  Defendants' attorney says Plaintiff indicated that she "Love[s] it," and again ignores the context in which the sentence came.  Here you have an email where Plaintiff already declared that she had a few corrections, but then without approving a letter that needed a few corrections, says that she "loves when Defendants says they would "WAR with the school district on Plaintiff's behalf." She even stated that word in all caps.  Defendants boasted that they would bring WAR, and Plaintiff loved that, as she even stated, *war is "brutal*."

Defendants in their reply brief admitted that it was agreed-upon between Plaintiff and the Defendants that Plaintiff must first read and approve the appeal letter before mailing. See e.g., *"Defendants acknowledged that they agreed to allow Plaintiff to review the draft*[.]" Deft. Brief @3.  However, there is a lot more evidence showing that Defendants did not let Plaintiff see their final draft nor did they make the much needed corrections.  For instance, on May 11, 2018, there were email exchanges between Plaintiff, Everett Stern, Joe LNU, and others from somewhere around 9am up until 11pm.  Each of these exchanges would clearly show that Plaintiff was still trying to get the corrections done before sending, only that from the exchanges, one could see that the "Appeal letter" had been erroneously sent out, and that all the email exchanges were the

2

Defendants' way of trying to convince Plaintiff to let it go, even including suborning perjury of

Plaintiff which Plaintiff adamantly refused to give in to. Plaintiff says suborning perjury because

Defendants were trying vehemently to have Plaintiff say that her son was called "nigger" many

times, to which Plaintiff refused to say, and Defendants switching gears and trying to have

Plaintiff say that while her son was called "nigger" only once, but he might have been called

nigger many times behind his back. There is no way Plaintiff could tell what was happening

behind her son's back, yet Defendants continued to press her to say that her son was called

nigger many times behind his back. In a letter by one of Defendants' guys named JT, he said

"Gloria, from my experience if it is reported once it happened at least 10x that." This email was

written by 7.06pm on May 11, 2018. See attached email marked as **Exh. 3**. On the same day at

5.13 pm, Everett Stern wrote, *inter alia,* "Is it possible that your son has been called nigger more

than once but that incident is the only one being recorded?" See email, marked as **Exh. 4**.

    One thing that is becoming clear here, is that this matter may not be suitable to be resolved

in a motion to dismiss because there are issues of material facts that could be disputable

pertaining to what really happened; when the appeal letter was actually sent out, whether before

or after the litany of email exchanges; whether the few corrections Plaintiff wanted made were

indeed made before the mailing was done. Accordingly, it is imperative that the pending motion

to dismiss must be denied.[1]

---

[1] There is an email discovered which was written by Defendants' attorney where he represented to this Plaintiff that a non-attorney could not represent someone in a school district matter, something that is false, and something that further necessitated Defendants' breach of contract by withdrawing from Plaintiff's representation. See email, marked as **Exh. 5** and compare with New Jersey law that actually allow non-attorneys to represent someone in such litigations including hearings. See **Exh. 6**

## II.            Defendants Did Publish the Defamatory E-mail

As an initial matter, it should be noted that the Defendants finally admitted that these defamatory comments (written twice, in two separate emails) were indeed published to a third party, to wit, Max O'Keefe. See Deft. Reply Mot., @4.   In their argument about attorney/client privilege, the Defendants cite to *Chamberlin v. 101 Realty, Inc.,* 626 F. Supp. 865, 871 (D.N.H. 1985) for the proposition that Max O'keefe, the third party who received the published defamatory comment by the Defendants, was their attorney and that the publication was in an anticipation for a civil action.  Upon a perusal of their case law, it is revealed that Defendants' reliance on this case is not just misplaced, but it works against their position.  *Chamberlin* stated that "[it] is established law that statements made *in the course of judicial proceedings* are absolutely privileged from liability in civil actions, *provided they are pertinent to the subject of the proceedings*. *Pickering v. Frink, supra,* 123 N.H. at 329, 461 A.2d 117; Restatement (Second) of Torts § 587 (1977) (emphasis added.)

Defendants attorney who was the third party that these defamatory comments were published to indicated that he was hired because Defendants anticipated a litigation between them and Plaintiff, and therefore, communication to them from Defendants should be protected as privileged.  However, Defendants sent a letter to Plaintiff on September 23, 2018 delineating the basis in which this lawyer was hired. In that letter, Mr. Stern stated: "The Board of Education is keeping me out of the fight and I have been fighting back with them…I then decided to get my lawyer involved because the Board of Education was citing that you did not follow a certain procedure by not signing a document.  To your benefit I used my own legal resources to ensure you filled out every possible paper work and that there was no way the Board could deny me to

4

be your advocate…..They (meaning his attorneys) have no part in this case except to ensure all the legal dots were crossed as I said from the beginning I was not a lawyer and Tactical Rabbit was not a lawfirm(sic)." See Exh. 7.

Defendants' explication that his lawyers " have no part in this case except to ensure all the legal dots were crossed" showed that not only is this attorney misleading this Court on the reason he was present and received the publication, but it is clear that it wasn't part of the reasons courts have stated falls under the ambit of privileged communications. Hiring of this attorney as the Defendant stated that they have "no part in this case," shows that it is not "*in the course of judicial proceedings,"* and calling Plaintiff 'unstable" in two separate emails copied to this attorney, is definitely not pertinent to the subject of the proceeding ("*provided they are pertinent to the subject of the proceedings*.") Id. The subject of the proceeding was to exonerate Plaintiff's son from a HIB adjudication. As such, there is absolutely no basis in which this attorney could even begin to take advantage of a noble provision of the law that protects well meaning attorneys in judicial proceedings.

To the extent that the Defendants are arguing conditional privilege by relying on *Beckman v. Dunn*, 419 A. 2d 583,587 (Pa. Super. 1980), in using the phrase "Communications made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause," the court in *Chamberlin* found that "the determination of the existence of such a conditional privilege must be made by the trier of fact," citing *Pickering v. Frink,* 123 N.H. 326, 329,

461,2d 117 (1983).  In any event, such reliance would still prove misplaced giving the circumstances in which this attorney came into the picture.[2],[3]

Accordingly, it still remains that under all the existing circumstances and the arguments before this Honorable Court, the Defendants' motion to dismiss should be denied.

Respectfully Submitted:

Christian C. Nduka, Esq.
Attorney for the Plaintiff
1233 St James St, Philadelphia, PA 19107

Dated: August 24, 2019.

---

[2]  Furthermore, having revealed that this attorney was the same who had been in cahoots with these defendants in most of their dealings in this matter, it may well come a time when further discovery could necessitate a possible conspiracy theory where this attorney may have aided and abetted the breach of contract, the defamatory comments, and the inducement of the Plaintiff to commit perjury about how many times her son was called nigger.
[3] Title 18 U.S.C., Section 1622 provides: whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned not more than five years, or both.

 AT&T  LTE                    6:21 AM                    100% 🔋 ⚡

✕                        BOE_Gloria_1.pdf                        



**State of New Jersey**
OFFICE OF ADMINISTRATIVE LAW
P.O. Box 049
Trenton, NJ 08625-0049

OAL Docket No. EDU 16045-2018 S

Agency Ref No. 253-9/18

Transmitting Agency: Department of Education

Filing Date: November 05, 2018
*****************************************
U.N. o/b/o minor child, M.U.V. Bd of Education of t Towns of Mansfield, Burlington County                    Notice of
                                                                                                          Filing
*****************************************
Nature of proceeding:

Petitioning parent challenges Board's HIB determination.


    This case was received by the Office of Administrative Law (OAL) on the above filing date and given the docket number above. You will receive another notice informing you of the date and location of the hearing. Please refer to the docket number in any correspondence and have the docket number available if you call the OAL at 609-689-4028.

    The rules controlling the hearing, including discovery, motions, and other pre-hearing and post-hearing procedures, are found in N.J.A.C. 1 1-1 et. seq. These rules can be accessed through a link on the Office of Administrative Law's website www.state.nj.us/oal. (see the "Rules" section under the Rules tab) Additional information about the hearing process is also on the website. (see the "Hearing" section under the Hearing tab)

    Parties may represent themselves, may be represented by an attorney, or in some cases, may be represented by qualified nonlawyers. The standards for nonlawyer representation are in N.J.A.C. 1 1-5.4 et. seq. Nonlawyer representatives must submit a Notice of appearance/application on an OAL form at least 10 days before the hearing. Forms are available from the OAL clerk or on the OAL website (see "Notice of Appearance/Application under the Forms tab).


November 05, 2018                                        Deputy Clerk, OAL
Date




**State of New Jersey**
OFFICE OF ADMINISTRATIVE LAW
P.O. Box 049
Trenton, NJ 08625-0049

SERVICE LIST
OAL DOCKET NO. EDU 16045-2018 S

Samantha L. Price, Director                              **EXH. 6.**





**Max O'Keefe**
to Everett Stern & 1 more.
Nov 12, 2018 at 4:00 PM

Good afternoon Gloria,

In reviewing the New Jersey
Administrative Code, specifically
NJAC 1:1-5.4, it appears that Mr.
Stern, as a non-attorney, is not legally
permitted to represent you at the
appeal hearing pending before the
New Jersey Office of Administrative
Law. You are permitted to represent
yourself or you may hire an attorney
barred in the state of New Jersey to
represent you.



**EXH.5.**

# POLICIES AND PROCEDURES
# MARCH 2019

The Honorable Mitchell S. Goldberg
United States District Court
Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse, Room 7614
601 Market Street
Philadelphia, Pennsylvania 19106-1797
Telephone: (267) 299-7500
Facsimile: (267) 299-5056

## GENERAL INFORMATION

### 1.  Communications with Chambers

Written communication is permitted by regular mail or facsimile regarding scheduling and other non-substantive matters.  Before communicating with the Court on scheduling, counsel should ascertain the position of opposing counsel and include that position in the correspondence.  All substantive issues must be addressed by an appropriate motion or other filing.  Judge Goldberg does not wish to receive copies of correspondence between counsel.

Law clerks may not render advice to counsel and have no authority to grant continuances or any other relief.  Telephone inquiries should be directed as appropriate to either of the following:

> For matters related to civil scheduling and case management, requesting telephone conferences, and general procedures:
>
> • Civil Deputy/Judicial Secretary: Sharon Lippi
>   Telephone:  (267) 299-7500
>   Facsimile:    (267) 299-5056
>
> For matters related to criminal scheduling and case management, and obtaining transcripts of civil and criminal proceedings:

- Criminal Courtroom Deputy/ESR: Steve Sonnie
  Telephone: (267) 299-7509
  Facsimile:    (267) 299-7058

## 2.   Telephone Conferences

Counsel may request a telephone conference to resolve straightforward discovery disputes, but the resolution of complicated discovery matters should be initiated through the filing of a formal motion.   Counsel must attempt to resolve all discovery disputes with opposing counsel before requesting the Court's assistance.

## 3.   Stipulations/Consent Decrees

Any stipulations, consent decrees, or other documents requiring Court approval or the Judge's signature must be submitted to the Clerk's Office.

## 4.   Electronic Case Filing

Counsel shall file all pleadings electronically, through the Electronic Case Filing System (ECF).  In the unusual case where counsel does not file using ECF, courtesy copies of all pleadings and motion papers shall be delivered to Chambers, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania 19106.

# C<small>IVIL</small> M<small>ATTERS</small>

## 1.   12(b) Procedural Order - Pre-Motion to Dismiss Conferences

In an effort to reduce the number of easily resolvable motions to dismiss, upon the filing of a complaint, the Court will file a 12(b) Procedural Order.   This Order requires any party who intends to file a motion to dismiss, motion for a more definite statement, motion to remand, motion for change of venue or motion for judgment on the pleadings, to submit a letter to the Court, succinctly stating the basis for the motion, and requesting a pre-motion conference.   After the opposing party submits a response, the Court will hold a phone conference to determine if there is any agreement on which claims may be voluntarily dismissed.

This procedure does not apply in cases in which either side is *pro se*, or in bankruptcy or social security appeals.

The 12(b) Procedural Order is posted on the Court's website.

## 2.   Rule 26 Conferences

The Rule 26(f) conference between counsel shall take place as soon as possible and, in any event, at least fourteen (14) days before the Rule 16 scheduling conference. Outstanding motions will not excuse counsel from timely holding this meeting and submitting a Rule 26 plan.   Rule 26(f) submissions shall be directed to Chambers by filing on ECF or facsimile, or mail.

### 3.    Rule 16 Scheduling Conferences

A preliminary pre-trial conference pursuant to Fed. R. Civ. P. 16 will be scheduled shortly after a defendant has filed an appearance or pleading.   At least three (3) business days before the Rule 16 conference, counsel shall file a joint report of the Rule 26(f) meeting with a proposed discovery plan.   Topics addressed at the initial pre-trial conference will be those listed in Local R. Civ. P. 16.1(b) and will also include the progress of self-executing disclosure under the Fed. R. Civ. P. 26(a), discovery, the preservation and production of electronically-stored information, settlement and mediation proposals.

Lead trial counsel must attend the Rule 16 conference and must enter an appearance prior to the conference.   All applications to appear *pro hac vice* must be approved prior to the conference.   For the convenience of out-of-state counsel, in some instances and upon request, the Rule 16 conference may be conducted via telephone.

Any attorney appearing at the conference shall have a thorough understanding of the facts, shall be prepared to discuss all claims and defenses in detail, shall have evaluated the case for settlement purposes, and must have settlement authority from the client.   Motions to dismiss, transfer, add parties, and other threshold motions should be filed before the conference.   Counsel must be prepared to present argument at the conference on any pending motions.

At the conclusion of the Rule 16 conference, a Scheduling Order will be issued by the Court.

Counsel may not unilaterally extend any discovery deadlines set forth in the Court's Rule 16 Scheduling Order without Court approval.   A letter request for a discovery deadline extension shall be submitted by facsimile.   Counsel shall articulate the basis/grounds for the extension request, whether opposing counsel agree, and what discovery has been completed to date.

## 4. Discovery

The Federal Rules of Civil Procedure call for voluntary, cooperative discovery in a timely manner.   The information required to be disclosed pursuant to Fed. R. Civ. P. 26(a) is required to be exchanged no later than fourteen (14) days after the date of the order scheduling the Rule 16 conference.

Counsel should be prepared to report on the progress of discovery at the Rule 16 conference.   Pending motions do not excuse counsel from proceeding with discovery.

The Court encourages the submission of routine discovery disputes through correspondence filed on ECF that shall not exceed three (3) pages.   Within seven (7) days thereafter, any responsive correspondence shall also be filed on ECF and shall not exceed three (3) pages.   Upon review, the Court may schedule of a telephone conference.   Prior to the above submissions, Counsel shall meet and confer to make every effort to come to an amicable resolution.

If a motion to compel is filed under Local R. Civ. P. 26.1(g), the motion shall not exceed five (5) pages, shall not contain exhibits, and shall not include a brief or

memorandum of law, unless the motion involves the invocation of a privilege.   The certification required under Rule 26.1(f) must state what efforts were made to resolve the dispute.

Judge Goldberg encourages telephone conferences to resolve disputes during depositions in situations where the deposition would otherwise have to be adjourned.

## 5.   Confidentiality Agreements

Judge Goldberg will only consider entry of stipulated confidentiality or sealing orders if the parties demonstrate that "good cause" exists pursuant to Fed. R. Civ. P. 26(c)(1)(G) and the mandates of Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) are applicable.   All such orders must contain the following language (or language substantially similar):

> *The Court retains the right to allow disclosure of any subject covered by this stipulation or to modify this stipulation at any time in the interest of justice.*

## 6.   Settlement Conferences

Except in non-jury trial matters, the issue of settlement may be raised at all stages in the proceedings.   Consistent with Local R. Civ. P. 53.3, Judge Goldberg directs all parties to consider the use of an alternative-dispute-resolution process at an appropriate stage in the litigation.

In most cases, a settlement conference will be scheduled before United States Magistrate David R. Strawbridge.   Judge Goldberg strongly encourages litigants to avail themselves of Judge Strawbridge's skillful assistance regarding settlement

throughout the course of the litigation.

## 7. Requests for Extensions of Time

Where compelling circumstances exist, counsel may request an extension of a filing or other deadline.   Extension requests should be made through correspondence and the counsel requesting the extension shall state the position of opposing counsel. Any counsel opposing the extension shall submit a responsive correspondence setting forth the reasons for opposition.   Counsel may not extend any deadlines without Court approval.

## 8. Pre-trial Settlement

Upon reaching a settlement, counsel must notify Judge Goldberg's Chambers immediately and request dismissal of the action pursuant to Local R. Civ. P. 41.1(b) or propose some other procedure that will effectively terminate the litigation.

## 9. Length and Content of Briefs or Legal Memoranda

All grounds for relief should be set forth in a single, comprehensive motion.   A motion to dismiss, for example, should not be divided into separate motions for each count, but rather should include all bases for relief.   Any brief or memorandum filed in support of the motion should be limited to twenty-five (25) pages.   Any brief or memorandum filed in opposition or in response to a motion is subject to the same page limitation.   If a party requires more than twenty-five (25) pages to explain its position to

the Court, a motion to exceed the page limit should be filed prior to the memorandum deadline, setting forth good cause for granting an exception to this rule.

Judge Goldberg appreciates courtesy copies of significant motions, memoranda of law, and other pleadings, along with attachments/exhibits, but requests that counsel send to Chambers only one courtesy copy. All attachments and exhibits shall be submitted in bound form. Transmittal of courtesy copies by facsimile is not permitted.

## 10. Reply and Surreply Briefs

If necessary, reply briefs for motions for summary judgment may be filed without leave of Court. However, leave of Court is required to file surreply briefs regarding motions for summary judgment. For all other motions, reply and surreply briefs may only be filed with leave of Court. Generally, reply and surreply briefs will only be permitted when necessary to rebut an issue or factual assertion not covered by the party's original submission. Leave will not be granted to re-state arguments previously covered. When seeking leave of Court, counsel should file a motion, attaching the proposed reply or surreply as an exhibit. When permitted, reply and surreply briefs are limited to ten (10) pages each and should be filed within fourteen (14) days of the filing of the document to which it replies.

## 11. Rule 56 Motions

Any motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 shall include a short and concise Statement of Undisputed Facts as a separate exhibit. The statement shall set forth, in numbered paragraphs, all material facts that the moving party contends are undisputed and entitle the movant to judgment as a matter of law.

Only those facts which bear on dispositive material issues should be included.   See Section 8 above for length and content of briefs or legal memoranda.

The papers opposing a motion for summary judgment shall include as a separate exhibit a short and concise statement of the material facts, which respondent contends present genuine issues for trial.   This statement should respond to the numbered paragraphs set forth in the moving party's Statement of Undisputed Facts. The responding party also shall set forth, in separate numbered paragraphs, any additional facts which the respondent contends preclude summary judgment.   The Court will accept all material facts set forth in the moving party's statement as admitted unless controverted by the opposing party.

Statements of material facts in support of or in opposition to a motion for summary judgment shall include specific references to the parts of the record that support each statement.   Each stated fact shall cite the source relied upon, including the page and line of any document to which reference is made.

Pursuant to Fed. R. Civ. P. 56, reply briefs regarding motions for summary judgment may be filed without leave of Court.   Leave of Court is required for responsive surreply briefs regarding motions for summary judgment.

## 12.  Injunctions

Judge Goldberg will promptly list any request for a temporary restraining order ("TRO") or a preliminary injunction assigned to him.   When possible, a pre-hearing conference will be scheduled to discuss discovery issues, and allocate a time for the hearing.   Expedited discovery will also be discussed and, when appropriate, ordered at

the conclusion of the pre-hearing conference.

**13.  Pre-trial Conferences**

A pre-trial conference date will be set after any denial of motion for summary judgment or if no such motion has been filed after the completion of discovery. Motions *in limine,* objections to exhibits, *voir dire*, other pretrial matters and trial procedures will all be discussed and resolved at the pre-trial conference.

**14.  Trial**

Judge Goldberg's pre-trial Order will typically assign a date certain for trial. Because trial dates are established well in advance and continuances will rarely be granted, counsel should be prepared to proceed on the scheduled trial date.

Prior to trial, counsel shall supply the Court and opposing counsel with a tabbed exhibit binder and exhibit index.  An additional binder shall also be prepared for the Deputy Clerk and for use with witnesses.

Other miscellaneous trial procedures:

-       **Note-taking by Jurors**

Judge Goldberg permits jurors to take notes.

-       **Examination of Witnesses Out of Sequence**

The Court will permit counsel to examine his/her own witnesses out of sequence for the convenience of a witness.

-       **Opening Statements and Summations**

Judge Goldberg will typically be flexible regarding time limits for opening statements and summations and will discuss the time

needed with counsel prior to the speeches.

- **Examination of Witnesses or Argument by More Than One Attorney**

    More than one attorney for a party may examine different witnesses or argue different points of law before the Court. Only one attorney for each side may examine the same witness.

- **Videotaped Testimony**

    Videotaped testimony should begin with the witness being sworn. Counsel should bring objections to the Court's attention at the time of the final pre-trial conference. After the Court rules on any objections, counsel must edit the tapes before offering the videotaped testimony at trial.

- **Offering Exhibits into Evidence**

    Unless the parties have an agreement as to the admissibility of a proposed exhibit, it may not be published to the jury, nor may a witness testify as to its content, until it has been admitted into evidence.

- **Written Jury Instructions**

    The Court will typically provide the jury a copy of the written jury instructions.

- **Exhibits in the Jury Room**

    After the jury has been instructed and taken to the jury room to begin deliberations, the Court and counsel will discuss which exhibits should go

out with the jury for their consideration during deliberations.

- **Interviewing the Jury**

In certain cases, Judge Goldberg may allow counsel to interview jurors but will instruct the jury that they are not required to talk to the attorneys. Permission to speak to jurors after a verdict is recorded must be obtained by the Court.

## CRIMINAL MATTERS

### 1. Motions Practice

All pre-trial motions must be filed no later than twenty (20) days in advance of trial date and, except in rare circumstances, will be heard on a date prior to the scheduled trial date.

All post-trial motions must be filed in accordance with the Federal and Local Rules of Criminal Procedure. Supporting memoranda for such motions and response memoranda shall not exceed twenty-five (25) double-spaced pages. Reply and sur-reply memoranda may be filed only with leave of the Court.

### 2. Continuances of Trial

Any request for a continuance must be filed no later than fourteen (14) days in advance of the scheduled trial date. Requests for a continuance must be filed as a motion stating the reasons for the request. Any such motion must be accompanied by a proposed order consistent with the requirements of the Speedy Trial Act, 18 U.S.C.

§ 3161.   The order shall include a proposed finding that explains in reasonable detail why the ends of justice served by granting the requested continuance outweigh the best interest of the public and the defendant in a speedy trial.   Any motion for a continuance of trial date must be accompanied with a speedy trial waiver.   The speedy trial waiver form can be found as an attachment to the first trial listing.   For a government continuance request, where the defendant will not sign the waiver, a hearing will be held. Continuance requests by letter in criminal cases are not permitted.

**3.   Pre-trial Hearings**

Suppression, *Starks* and *Daubert* hearings are typically held at least fourteen (14) days prior to trial.   Following a motion to suppress hearing, counsel may be requested to submit a post-hearing brief or proposed findings of fact and conclusions of law to the Court.   A schedule of these submissions will be established at the conclusion of the motion to suppress hearing.

**4.   Pre-trial Conferences**

Pre-trial conferences with counsel will be scheduled at least three (3) days prior to trial.   Any issues relating to *voir dire*, motions *in limine*, jury instructions, and jury verdict forms will be addressed at that time.

**5.   *Voir Dire***

Counsel may submit proposed *voir dire* questions.   Judge Goldberg will conduct most of the *voir dire* in criminal jury matters.   Counsel may be permitted to address the venire with follow-up questions, but only after approval by the Court.

**6.   Trial Memorandum**

13

At least seven (7) days prior to the trial date, the government must file a trial memorandum setting forth the essential elements of the offenses, the facts which it intends to present, the identity of each witness it intends to call, a statement of the substance of each witness's testimony and any legal issues.  The defendant is not required to file a trial memorandum but may do so.

**7.  Proposed Jury Instructions and Verdict Forms**

Each party must submit to the Court and serve on opposing counsel proposed points for charge and any proposed jury interrogatories no later than seven (7) days prior to the trial date.  Each point for charge and proposed jury interrogatory shall be numbered and on a separate sheet of paper identifying the name of the requesting party.  Each proposed instruction must be submitted with authority.  If a model jury instruction is used, the party submitting it shall state whether the proposed instruction is unchanged or modified.  If a party modifies a model instruction, additions shall be underlined and deletions shall be placed in brackets.

**8.  Guilty Plea Memorandum**

The government must submit a guilty plea memorandum at least two (2) days prior to the change of plea hearing.  The memorandum shall include the elements of each offense to which the defendant is pleading guilty and legal citations for the elements, the maximum statutory penalties for each offense, the terms of any plea agreement and the factual basis for the plea.

**9.  Sentencing**

Sentencing motions and supporting memoranda must be filed at least seven (7)

days prior to the scheduled sentencing date, and any response thereto must be filed at least seven (7) days prior to the scheduled sentencing date.  Motions filed pursuant to U.S.S.G. § 5K1.1 shall be filed no later than seven (7) days prior to sentencing.

Sentencing memoranda (exclusive of motions) must be filed no later than seven (7) days prior to the scheduled sentencing date, and any response thereto must be filed at least five (5) days prior to the scheduled sentencing date.

A sentencing date shall be selected at the time the Court accepts a guilty plea or there is a conviction at trial.  Requests for continuances from sentencing are discouraged, and sentencing will be continued for good cause only.  Judge Goldberg will not consider any request for a continuance exceeding ninety (90) days.

In the rare event of a ninety-day continuance, if counsel for both the government and the defendant(s) believe that good cause exists for an additional continuance beyond the initial ninety-day period, counsel may jointly request in writing an additional continuance.  Any such request must state why good cause exists for an additional continuance.  If Judge Goldberg grants such a request, counsel shall be required to submit in writing a joint status update every forty-five (45) days until judgment of sentence is entered.

If a defendant is responsible for restitution, the government must submit sufficient information in its sentencing memorandum to enable the Court to determine entitlement, the name and the address of each victim, the amount of loss for each victim, and documentary support for each amount.  If liability for restitution is joint and several, the government shall itemize the restitution amount for which each defendant is responsible.

15

**EXH. 3.**

...nal Letter

...m: Joe templin (joe@tacticalrabbit.com)

...o:     n.udodi@yahoo.com

Cc:    stern@everettstern.com

Date:  Friday, May 11, 2018 07:06 PM CDT

Gloria, from my experience if it is reported once it happened at least 10x that. And from what you have said about Michael being a goodhearted and slightly naïve kid, it is probably 100x. And it is wrong. Every. Single. Time.

Mr. Stern is girding for battle to protect you and your son. In my experiences with him, he only preps like this if he absolutely believes in the cause and is ready to fight to the end.

He will get results for you. Let him fight.

Joe

JT

This transmission is intended to be delivered only to the names addressee(s) and may contain information that is confidential and proprietary. If this information is received by anyone other than the named addressee(s), the recipient(s) should immediately notify the sender, and obtain instructions as to the disposal of the transmitted material. In no event shall this material be read, used, copied, reproduced, stored or retained by anyone other than the named addressee(s), except with the express written consent of the sender or the named addressee(s).

Tactical Rabbit Inc. always protects the names of its contractors, clients, and sources regardless of circumstances. All activities will be planned and carried out in strict adherence to Intelligence Community Directive 304 (ICD 304), International Trafficking Arms Regulations (ITAR), the Foreign Corrupt Practices Act (FCPA), and all applicable U.S. laws and regulations, including but not limited to all SEC rules and regulations. Tactical Rabbit Inc. is a private intelligence company. Tactical Rabbit is not an investment advisor, accounting firm, law firm, or consumer reporting agency, and does not provide any investment, financial, accounting, legal, or credit advice. Tactical Rabbit Inc. intelligence may NOT be used to make decisions about consumer credit, employers, insurance, tenant screening, or any other purposes that would require FCRA compliance. Tactical Rabbit Inc. does not have any formal affiliation with or connection to the Central Intelligence Agency or the Federal Bureau of Investigation although it may at times contract with former employees of federal agencies. In some cases, Tactical Rabbit Inc. will attempt to facilitate a federal investigation through channels similar to those to which any private citizen has access. Tactical Rabbit Inc. uses the utmost diligence to guard and protect confidential information and trade secrets. In the event that a client contracts with Tactical Rabbit Inc., client information will be kept confidential and not divulged, communicated, or used except to the extent deemed necessary by Tactical Rabbit Inc. in providing services to the client.

On Fri, May 11, 2018 at 6:58 PM, Email Team <n.udodi@yahoo.com> wrote:

You are correct, racial slurs have been directed at my son more than once. He's been told he's ugly because he's black then called a nigger. You are also right that these are the only ones recorded but those not mean they are the only occurrences. You are very correct that it is a racially charged environment and by letting the kid that used the the racial slurs go, while sending my son's case to the COE then makes it discrimination. Now I see your angle. Written statements can be interpreted a thousand ways. Your explanation makes absolute sense. I appreciate the attached affidavit of my statement. Your view of the situation and how you chose to portray it is your way of advocating for me. I do appreciate your passion in the letter, so please do proceed.

_Sent from Yahoo Mail for iPhone_

On Friday, May 11, 2018, 6:12 PM, Everett Stern <stern@everettstern.com> wrote:



# EXH.4.

. Everett Stern (stern@everettstern.com)

n.udodi@yahoo.com

Cc: joe@tacticalrabbit.com

Date:  Friday, May 11, 2018 05:13 PM CDT

The school is going to launch back and say everything is false. That is called defense. What is critical is that I based my letter on what I was told and what was in the affidavit. Are you afraid that the letter I wrote is false therefore we are in trouble? Was your son called a Nigger? Is it possible that your son has been called a nigger behind his back by other white students which is causing the tension? Is it reasonable to believe that if your son was called a Nigger that there is a racially charged environment where many of the statements against your son are based on discrimination? What happened to the other student who called your son a Nigger? Is it possible that your son has been called a nigger more than once but that incident is the only one being recorded? Have you talked to your son about kids calling him a Nigger and if it is occurring on a consistent basis (more than once) I was told on the phone yes. The issue we are bringing up is more than the appeal. We are not debating the school and their "facts" We are debating that the HIB charge should have never been issued because the real issue of discrimination is not being addressed. Do you feel I did not accurately represent you and your family in that letter? If I go to war then I had better be going to war on the right basis.

Sincerely,

Everett A. Stern, M.B.A.
Intelligence Director
United States of America
www.TacticalRabbit.com
703 - 408- 4973

Fmr. U.S. Senate Candidate
www.EverettStern.com

-----

This transmission is intended to be delivered only to the names addressee(s) and may contain information that is confidential and proprietary. If this information is received by anyone other than the named addressee(s), the recipient(s) should immediately notify the sender, and obtain instructions as to the disposal of the transmitted material. In no event shall this material be read, used, copied, reproduced, stored or retained by anyone other than the named addressee(s), except with the express written consent of the sender or the named addressee(s).

On May 11, 2018, at 3:58 PM, Email Team <n.udodi@yahoo.com> wrote:

Okay, if you say so. A bit scary when the school launches back that our allegations are false. I guess that's how the system goes.

Sent from Yahoo Mail for iPhone

On Friday, May 11, 2018, 3:44 PM, Everett Stern <stern@everettstern.com> wrote:

Hi Gloria,

I understand your comments and corrections but the letter is accurate and needs to remain as is to serve our purpose. I wrote the letter in a certain way. I had to get them to launch a new



On Sunday, September 23, 2018, 7:00 PM, Everett Stern <stern@tacticalrabbit.com> wrote:

Hi Gloria,

I appreciate the email but I think their is some confusion. The Board Of Education is keeping me out of the fight and I have been fighting back with them. There have been numerous back and forth letters between us. I then decided to get my lawyer involved because the Board of Education was citing that you did not follow a certain procedure by not signing a document. To your benefit I used my own legal resources to ensure you filled out every possible paper work and that there was no way the Board could deny me to be your Advocate. This was when you received the notification from my law firm. Once you sent in the document the lawyers did NOT submit in my lawyers name, but MINE. This was important because my lawyers represent me and not you. They have no part in this case except to ensure all the legal dots were crossed as I said from the beginning I was not a lawyer and Tactical Rabbit was not a lawfirm. We are now waiting on a response from the Board of Education. This is where the case stands. I am not willing to write a public letter at this time because the letter you recently provided must be either rejected or approved by the board. I am sorry but we are at a stand still right now. I have been advocating for you for months. You just have not seen the phone calls and the work that has gone into this. For me to involve my own personal law firm is unheard of for the cases I have handled. I am doing everything in my power to help, but right now I am limited. I am not willing to call out a principle for saying "nigger"

On Sep 23, 2018, at 6:44 PM, Email Team <n.udodi@yahoo.com> wrote:

EXH. 2.

To:        Team for

⁂ Final Letter

From:  Email Team (n.udodi@yahoo.com)

To:      stern@everettstern.com

Cc       joe@tacticalrabbit.com

Date:   Friday, May 11, 2018 02:05 PM CDT

Hi
Nicely written!! I have a few corrections.
1) As per my son, he was only called a nigger one time (not numerous times) and it happened after the 'Donald Trump Statement'
2) He innocently told his friend his new look resembles Donald Trump. This statement was not related to being called a nigger, so he was not defending himself by making that statement.
3) I don't know if the commissioner of education knows that my son was called a nigger. The main issue that the COE has on file on his record with regards to my son is the Donald Trump issue which is why they accused him of HIB
4) He has not been on many occasions called a nigger. The first racial slur was almost a year ago when the kid told my son that all black kids are ugly and the second is the 'nigger'. On both occasions, the events were reported to appropriate authority. My son never acted in any way with regards to defending himself
5) The commissioner of education may be confused as to the nigger statement since it is separate from the Donald Trump issue. For the appeal process I think the main focus should be clearing my son of the HIB allegation where he was accused of telling someone he looked like Donald Trump. Or at least mention this allegation in the letter so that the Commissioner of education is aware of why we are appealing. If possible I don't know if the nigger issue should be mentioned during the appeal process to the COE to clear my son of HIB especially as they are not related
These are just suggestions as I don't know how the appeal process works.

Please consider these issues because there will be major investigations afterwards and I want to make sure we are very accurate as we have documentation to prove the facts that occured. Anything else not documented cannot be proven. After the appeal process, then the nigger issue could be addressed in the public letter so the COE does not deny our appeal.

Thank you for the letter, now I see why you said 'WAR', it is brutal. I LOVE IT!!!!!.

Sincerely,
Nkiruka Udodi

Sent from Yahoo Mail for iPhone

On Friday, May 11, 2018, 2 12 PM, Everett Stern <stern@everettstern com> wrote:

Hi Gloria,

I received your Fedex and I have drafted my documents. Please review and approve immediately before I get notarized and send

Sincerely,