IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| NKIRUKA G. UDODI, | |
| --- | --- |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 19-2409 |
| EVERETT STERN and TACTICAL RABBIT, INC., | |
| Defendants. | |

## MEMORANDUM OPINION

Rufe, J.                                                                                                     February 10, 2020

Plaintiff Nkiruka Udodi, who initially proceeded *pro se* but is now represented by counsel, hired Defendant Everett Stern and his firm, Defendant Tactical Rabbit, Inc., to represent her son in a school disciplinary proceeding. The relationship deteriorated, resulting in this contract dispute. Plaintiff asserts claims for breach of contract, fraud, and defamation,[1] and invokes this Court's diversity jurisdiction, as she is a citizen of New Jersey and Defendants are citizens of Pennsylvania. Defendants moved to dismiss all claims against them.[2]

### I.   BACKGROUND

The New Jersey Legislature passed the Anti-Bullying Bill of Rights Act, commonly referred to as the Harassment, Intimidation, and Bullying (HIB) law, to ensure "a safe and civil environment in school."[3] Plaintiff's son was accused of an HIB violation at school.[4] Seeking to

---

[1] Compl. ¶¶ 17–25.

[2] Doc. No. 4.

[3] N.J. Stat. Ann. § 18A:37-13 (West 2020).

[4] Compl. ¶ 4.

contest the violation and clear her son's name, Plaintiff hired Defendants to represent and advocate for her son in the HIB process.[5]

Plaintiff alleges that Defendants guaranteed they would successfully advocate on behalf of Plaintiff and her son.[6] That advocacy was to include writing a letter to the school board to appeal the violation and, if necessary, "tak[ing] the matter public."[7] The parties agreed that Defendants would provide nine services, including preparing an "[a]ppeal [l]etter."[8] Defendants sent Plaintiff an itemized list of the agreed-upon services,[9] for which Plaintiff paid Defendants $8,000.[10]

Although Plaintiff understood that she would be able to approve the appeal letter before it was submitted, Defendants sent the appeal letter to the school board without her review.[11] When Plaintiff did review the letter, she was seriously dissatisfied.[12] She alleges that the letter "was

---

[5] *Id.* ¶¶ 4, 5. Although it is not entirely clear, it appears that Defendant Stern is not a lawyer and that Defendant Tactical Rabbit, Inc. is not a law firm. Instead, Tactical Rabbit appears to be a private intelligence firm that performs "due diligence," background checks, and PR services. *Id.* ¶ 7. In this instance, they also contracted to perform "legal research." *Id.* Whether this service, or any other aspect of the relationship, amounted to the unauthorized practice of law is not an issue for purposes of this motion.

[6] *Id.* ¶ 5.

[7] *Id.* ¶¶ 5, 8.

[8] *Id.* ¶ 7.

[9] *Id.*; Pl.'s Mem. Opp. Mot. to Dismiss [Doc. No 6], Ex. D. The Court considers this document, labeled an "invoice," at the motion-to-dismiss stage because Plaintiff's claims are based on the document—that is, she alleges that only one of nine agreed-upon services was delivered, so the list of agreed-upon services is the basis of one of her claims. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] 'document *integral to or explicitly relied* upon in the complaint" may be considered 'without converting the motion [to dismiss] into one for summary judgment." (quoting *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996))).

[10] Compl. ¶ 7.

[11] *Id.* ¶ 11. The exact sequence of events is somewhat unclear; Defendants contend that an email exchange between Plaintiff and Defendant Stern shows that she did have the opportunity to review and approve the letter before it was sent. Defs.' Reply Mem. Supp. Mot. to Dismiss [Doc. No. 9] at 2–3. Neither party has explained why this material, which is not part of the pleadings, should be considered on a motion to dismiss, and it is not obviously subject to any of the few narrow exceptions that allow courts to look beyond the pleadings.

[12] *Id.* ¶¶ 8–10.

2

incoherent, childish, unprofessional, and . . . adverse to Plaintiff's interest."[13] It misstated the facts in a way that "actually admitted the charges Plaintiff's son was fighting."[14] It also allegedly repeated an inordinate number of racial slurs when merely alluding to those words would have sufficed to explain the underlying incidents.[15]

Plaintiff expressed these concerns, at which point Defendants asked Plaintiff to sign some "waivers" that she felt were "against her and her son's interest."[16] When she refused to sign, Defendants notified Plaintiff that they would withdraw from the matter and that she needed to "hire a real attorney."[17] That termination is memorialized in an email Defendant Stern sent Plaintiff, with his attorney copied, telling Plaintiff that "[y]our emails show that you are not stable."[18] Plaintiff alleges that this accusation was intended to intimidate her.[19]

Plaintiff alleges that aside from the unsatisfactory appeal letter, Defendants did not deliver any of the agreed-upon services.[20] Defendants offered a partial refund, but Plaintiff has not received it.[21]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement"

---

[13] *Id.* ¶ 9.

[14] *Id.* ¶¶ 9–10.

[15] *Id.* ¶ 10.

[16] *Id.* ¶ 11.

[17] *Id.* ¶ 11.

[18] Pl.'s Mem. Opp. Mot. to Dismiss. [Doc. No. 6], Ex. C. The Court considers this email at the motion-to-dismiss stage because Plaintiff's defamation claim is based on it. *In re Burlington*, 114 F.3d at 1426 ("[A] 'document *integral to or explicitly relied* upon in the complaint" may be considered 'without converting the motion [to dismiss] into one for summary judgment." (quoting *Shaw*, 82 F.3d at 1220)).

[19] Compl. ¶ 12.

[20] *Id.* ¶ 14.

[21] Compl. ¶¶ 15-16.

3

lacks enough substance to demonstrate that he is entitled to relief.[22] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[23] Courts are not, however, bound to accept as true legal conclusions framed as factual allegations.[24] Something more than a mere *possibility* of a claim must be alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[25] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[26]

With these standards in mind, a complaint filed *pro se* is "to be liberally construed."[27] A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."[28] Nonetheless, *pro se* plaintiffs are still subject to basic pleading requirements.[29] The Third Circuit has further instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile.[30] The Court is cognizant that Plaintiff filed the Complaint *pro se*, and also acknowledges that she had the benefit of counsel's assistance in preparing some of the briefing on this Motion.

---

[22] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007).

[23] *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.,* No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[24] *Twombly,* 550 U.S. at 555, 564.

[25] *Id.* at 570.

[26] *Id.* at 562 (internal quotation marks and citations omitted).

[27] *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

[28] *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

[29] *Rhett v. New Jersey State Superior Court,* 260 F. App'x 513, 515 (3d Cir. 2008).

[30] *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002).

4

## III. Discussion

### a. Breach-of-Contract Claim

Plaintiff alleges that Defendants breached their contract by failing to deliver most of the agreed-upon services and by sending the unsatisfactory appeal letter to the school board without her approval.[31] Defendants argue that this claim should be dismissed because the Complaint fails to plead the essential elements of breach of contract. Specifically, Defendants argue that Plaintiff failed to attach the contract to the Complaint and that the Complaint does not "describe the contractual obligation allegedly undertaken, and makes no attempt to identify the duty that [Plaintiff] claims to have been violated."[32]

#### i. Choice-of-Law Analysis

As noted, the Court's jurisdiction in this case is based on diversity—Plaintiff is a citizen of New Jersey and Defendants are citizens of Pennsylvania.[33] In diversity cases, federal courts apply the choice-of-law rules of the forum state.[34] Pennsylvania's choice-of-law rules direct courts to begin by considering whether the laws of the states in question actually differ.[35] If they do not—that is, if there is "no conflict"—a further choice-of-law analysis is unnecessary, and the court may refer to the laws of the jurisdictions interchangeably.[36]

---

[31] Compl. ¶¶ 15, 17-19.

[32] Def's Mem. Supp. Mot. to Dismiss [Doc. No. 4] at 2.

[33] Compl. ¶¶ 2–3; Defs.' Mem. Supp. Mot. to Dismiss [Doc. No. 4] at 8 n.2.

[34] *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).

[35] *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 229–30 (3d Cir. 2007).

[36] *Id.* at 230 (emphasis omitted); *see also id.* at 229 (noting that where there are "no relevant differences between the laws of the two states"—a situation that used to be inaptly referred to as a "false conflict"—a court need not "engage in a choice of law analysis, and may refer to the states' laws interchangeably").

5

The elements of breach of contract are the same under both Pennsylvania and New Jersey law.[37] Thus, there is no conflict and the Court is permitted to refer to either or both.

### ii. Breach-of-Contract Analysis

Under Pennsylvania law, breach-of-contract claims contain three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages."[38] "While not every term of a contract must be stated in complete detail, every element must be specifically pleaded."[39] Pleading an oral agreement can suffice to establish the existence of a contract.[40]

The Complaint adequately alleges all three elements of breach of contract. First, it alleges the existence and essential terms of a contract: Defendants agreed to provide specified advocacy services in exchange for Plaintiff's payment of $8,000.[41] Defendants allegedly made guarantees about how they would fulfill Plaintiff's request.[42] The Complaint also alleges that Defendants confirmed this agreement in writing and that Plaintiff performed her part of the contract by paying them $8,000.[43] Defendants point out that Plaintiff failed to attach a copy of the contract to the Complaint,[44] but plaintiffs in federal court are not required to do so.[45]

---

[37] *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)); *Zelnick v. Morristown-Beard Sch.*, 137 A.3d 560, 566 (N.J. Super. Ct. App. Div. 2015) ("A cause of action exists for breach of contract when the plaintiff can demonstrate that there exists '[a] valid contract, defective performance by the defendant, and resulting damages.'" (quoting *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985))).

[38] *Ware*, 322 F.3d at 225 (citing *CoreStates Bank*, 723 A.2d at 1058).

[39] *CoreStates Bank*, 723 A.2d at 1058.

[40] *Id.*

[41] Compl. ¶ 7.

[42] Compl. ¶¶ 5.

[43] *Id.* ¶ 7.

[44] Defs.' Mem. Supp. Mot. to Dismiss [Doc. No. 4] at 2.

[45] *Transp. Int'l Pool, Inc. v. Ross Stores, Inc.*, 2009 WL 1033601 *1 (E.D. Pa. April 15, 2009); *see also id.* at *9 ("When a plaintiff pleads a contract according to its legal effect, the complaint does not need to resort to formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to place the

6

Second, the Complaint alleges that Defendants breached the contract by not allowing Plaintiff to review the appeal letter and by not providing the other contracted-for services.[46] Finally, the Complaint alleges that the breach resulted in damages: the loss of the fee for the services.[47] Defendants do not dispute that the Complaint alleges this element of breach of contract. Thus, Defendants' Motion to Dismiss will be denied as to this claim.

### b. Fraud Claim

Plaintiff claims that Defendants defrauded her of $8,000 by failing to deliver the agreed-upon advocacy services.[48] Defendants argue that the fraud claim should be dismissed because it is not pled with particularity; it does not "identify the nature of the fraud alleged" or "upon whom [it was] allegedly perpetrated"; or the "specific content of the alleged misrepresentation claimed to constitute fraud."[49] Defendants also argue that this claim is barred by the "gist of the action" doctrine because the Plaintiff is seeking a tort remedy arising out of a contractual relationship.[50] Because the Court will dismiss this claim based on the gist of the action doctrine, it is not necessary to discuss whether fraud was adequately pleaded.

---

defendant on notice of the contract claim in such a way that the defendant can reasonably respond"); *see also id.* at n.1 (noting that the "stricter, fact-pleading standards of Pennsylvania do not apply in federal court," including Pa. R. Civ. P. 1019(i), the rule Defendants seek to enforce here).

[46] Compl. ¶¶ 11, 15, 19. The Complaint also alleges that the appeal letter constituted a breach because it was "incoherent, childish, unprofessional, and . . . adverse to the Plaintiff's interest." Compl. ¶ 9. Whether the letter's quality was so poor as to constitute a breach is likely a question of fact; in any event, the other allegations suffice.

[47] Compl. ¶¶ 20, 26. The Complaint also requests relief in the form of punitive damages for $100,000. Compl. ¶ 26. Although Defendants did not raise this issue, the Court notes that punitive damages are generally not available for breach of contract under Pennsylvania law. *In re Holmes*, 76 B.R. 77, 78 (E.D. Pa. 1987) (citing *Hoy v. Gronoble*, 34 Pa. 9, 11–12 (1859)).

[48] Compl. ¶¶ 20-21.

[49] Def's Mem. Supp. Mot. to Dismiss [Doc. No. 4] at 3.

[50] *Id.*

7

### i. Choice of Law Analysis

Pennsylvania recognizes the "gist of the action" doctrine, which precludes recovery in tort law for contract-based claims.[51] New Jersey courts also apply this doctrine to pleadings asserting both contract and tort claims.[52] Because both jurisdictions apply this rule, there is no conflict and a choice of law analysis is unnecessary.[53]

### ii. Gist of the Action Doctrine

Under Pennsylvania law, where a claim arises from a contractual relationship, plaintiffs are barred from seeking additional recovery in tort law.[54] This principle, known as the "gist of the action doctrine," aims to "maintain the conceptual distinction between breach of contract claims and tort claims."[55] Whether the doctrine applies depends on the nature of the duty allegedly breached.[56] "If the facts alleged demonstrate that the duty breached was one created by the terms of the parties' contract, then the claim is one for breach of contract."[57] Here, the Complaint alleges that the basis for the fraud claim is the failure to deliver the agreed-upon services Plaintiff paid for.[58] Because the contractual agreement is the basis for Plaintiff's claim, the relevant duty is contractual and the gist of the action doctrine applies.[59] As a result, Plaintiff's

---

[51] *See, e.g., Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68–69 (Pa. 2014).

[52] *See, e.g., Silla Jewelry Co., Ltd. v. Sunico LLC*, No. 7542-15, 2016 WL 427723, at *11 (N.J. Super. Ct. Law Div. Feb. 1, 2016) ("In the instant matter, the Defendants/Counterclaimants['] alleged damages arise from that purported contractual breach, rather than an independent duty recognized in tort law. The gist of the action doctrine therefore applies, and precludes the Defendants/Counterclaimants' fraud and related tort claims.").

[53] *Hammersmith*, 480 F.3d at 229–30.

[54] *Bruno*, 106 A.3d at 68–69.

[55] *Takeda Pharms. U.S.A., Inc. v. Spireas*, No. 17-0452, 2017 WL 4401988, at *14 (E.D. Pa. Oct. 3, 2017) (quoting *KBZ Comm'ns Inc. v. CBE Techs. LLC*, 634 F. App'x 908, 910 (3d Cir. 2015)).

[56] *Id.*

[57] *Id.*

[58] Compl. ¶ 20-21.

[59] Plaintiff also alleges that Defendants breached an agreement that Plaintiff would review the appeal letter before it was sent to the school district. Compl. ¶¶ 8–11. Plaintiff's averments support a claim of breach of contract, and therefore a fraud claim based on that issue would also be dismissed under the gist of the action doctrine. *See*

8

claim for fraud based on Defendants' failure to deliver the agreed-upon services will be dismissed with prejudice.

### c. Defamation Claim

The Complaint also asserts a claim for defamation based on the email Defendants sent Plaintiff terminating the representation, in which Defendant Stern allegedly called Plaintiff "unstable."[60] Defendants argue that the defamation claim should be dismissed because the Complaint fails to plead facts satisfying the elements of defamation. Specifically, Defendants argue that the Complaint does not allege: 1) that the allegedly defamatory statement was published; 2) that, even if it was published to a third party, the statement was not protected by a conditional privilege;[61] 3) that Plaintiff suffered special harm; and 4) that the statement was an actionable statement of fact and not a mere opinion.

### i. Choice of Law Analysis

The issue of conditional privilege is dispositive of Plaintiff's defamation claim. Both Pennsylvania and New Jersey law make the absence of conditional privilege an element of a defamation claim.[62] Because the laws of the two jurisdictions are the same as to the relevant issue, there is no conflict, and "a choice of law analysis is unnecessary."[63]

---

*Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014) (identifying relevant duty under the gist of the action doctrine, "as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract").

[60] Compl. ¶¶ 12, 22–25; Pl.'s Mem. Opp. Mot. to Dismiss [Doc. No. 6], Ex. C.

[61] Defendants raised the issue of conditional privilege for the first time in their reply brief. *See* Defs.' Reply Mem. Supp. Mot. to Dismiss [Doc. No. 9] at 4–5. The Court will not deem this argument waived, however, because Plaintiff explained for the first time in her response brief that Defendant Stern's attorney, Max O'Keefe, was the "third[ ]party" to whom the Complaint alleges the defamatory statement was published. *See* Compl. ¶ 23; Pl.'s Mem. Opp. Mot. to Dismiss [Doc. No. 6] at 2.

[62] *See infra* n.84; *G.D. v. Kenny*, 984 A.2d 921, 927–28 (N.J. Super. Ct. 2009) (making "unprivileged publication of [the] statement to a third party" an element of defamation).

[63] *Hammersmith*, 480 F.3d at 229–30.

9

### ii. Conditional Privilege

Under Pennsylvania law, in an action for defamation, the plaintiff must plead: "(1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; [and] (7) abuse of a conditionally privileged occasion."[64]

To satisfy these elements, the Complaint alleges that Defendants "prepared a letter[ ]calling Plaintiff unstable" and that they "published the letter through the world wide web."[65] These allegations, the parties agree, refer to an email Defendants sent Plaintiff terminating their working relationship on the ground that Defendant Stern felt she was "unstable."[66] The Complaint further alleges that Defendants had previously advised Plaintiff that "the company always enjoy[ed] the second-read of their attorneys."[67] This last allegation, the parties also agree, refers to the fact that Defendants' attorney, Max O'Keefe, was copied on the email.[68] Defendants argue that even if the Complaint satisfies the other elements of a defamation claim, O'Keefe was the only person to whom the statement was published.[69] Accordingly, they

---

[64] 42 Pa. Cons. Stat. § 8343(a); *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 424 (Pa. 2015).

[65] Compl. ¶¶ 22–23.

[66] Pl.'s Mem. Opp. Mot. to Dismiss [Doc. No. 6] at 2–3; Defs.' Reply Mem. Supp. Mot. to Dismiss [Doc. No. 9] at 4.

[67] Compl. ¶ 23.

[68] Pl.'s Mem. Opp. Mot. to Dismiss [Doc. No. 6] at 2–3; Defs.' Reply Mem. Supp. Mot. to Dismiss [Doc. No. 9] at 4.

[69] Plaintiff also alleges that Defendants' statement was published to her friends and family who had access to her laptop and may thereby have read the termination email. Compl. ¶ 23. This does not amount to publication, since "[o]ne who communicates defamatory matter directly to the defamed person, who himself communicates it to a third person, has not published the matter to the third person." Restatement (Second) of Torts § 577 (1977); *see Carbone v. City of New Castle*, No. 15-1175, 2016 WL 406291, at *6 (W.D. Pa. Feb. 3, 2016); *Abella v. Barringer Res.*, 615 A.2d 288, 291 (N.J. Super. Ct. Ch. Div. 1992).

10

argue, the Complaint does not make out a claim for defamation, because any publication was subject to a privilege.[70]

The privilege element of defamation recognizes the need to balance two competing interests: encouraging the "free flow of information about matters of public concern" on one hand, and "the protection of reputation" on the other.[71] "The law of privilege is designed to protect speech in those narrowly defined instances in which the public interest in unrestrained communication outweighs the right of redress."[72] Thus, when an important interest is at stake, an otherwise defamatory communication may be absolutely or conditionally privileged.[73]

As is relevant here, a conditional privilege exists when a communication "affects a sufficiently important interest of the publisher" and "the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest."[74] For example, reporting a fellow employee's sexual harassment to a supervisor has been held to be conditionally privileged.[75] Conditional privileges may, however, be overcome if the privilege was abused or exceeded[76]—for example, by actual malice[77] or by publishing the statement to more recipients than was necessary.[78]

---

[70] *See Feggans v. Billington*, 677 A.2d 771, 776 (N.J. Super. Ct. App. Div. 1996) ("In determining whether the qualified privilege is a defense, it is irrelevant whether the statement at issue was defamatory. Thus, a court need not decide what normally is the threshold question of law, that is, whether a statement was 'reasonably susceptible of a defamatory meaning.'" (quoting *Kotlikoff v. The Community News*, 444 A.2d 1086, 1088 (N.J. 1982))).

[71] *Fees v. Trow*, 521 A.2d 824, 827 (N.J. 1987).

[72] *Id.*

[73] *Id.*

[74] Restatement (Second) of Torts § 594 (1977); *see Beckman v. Dunn*, 419 A.2d 583, 587–88 (Pa. Super. Ct. 1980); *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 408 n.2 (Pa. 2007) (Baldwin, J., concurring) (referencing with approval Restatement § 594); *Feggans*, 677 A.2d at 776.

[75] *Lutz v. Royal Ins. Co. of Am.*, 586 A.2d 278, 286–87 (N.J. Super. Ct. App. Div. 1991).

[76] *Fees*, 521 A.2d at 827–28.

[77] *Feggans*, 677 A.2d at 777.

[78] *Govito v. West Jersey Health Sys., Inc.*, 753 A.2d 716, 726 (N.J. Super. Ct. App. Div. 2000).

11

Here, Defendants argue that they "appropriately copied their legal counsel on the e-mail in which they terminated their business relationship with Plaintiff."[79] The Complaint is clear enough in light of Plaintiff's response memorandum, which acknowledges that the sole third-party recipient was Defendants' attorney.[80] Thus, drawing all reasonable inferences in Plaintiff's favor, it cannot be disputed that the communication served an important interest of Defendants—keeping their attorney apprised of developments in a matter that might ripen into litigation.[81] Nor can it be disputed that their attorney was a proper recipient for purposes of the privilege, that is to say, one who was in a position to help defend their interest. As a matter of law, therefore, the communication was subject to a conditional privilege.[82]

"Once a conditional privilege applies, a plaintiff's defamation cause of action can survive only if the privilege was abused."[83] To survive a motion to dismiss, defamation plaintiffs therefore must plead abuse of a conditional privilege, at least where the potential relevance of a privilege is clear from the complaint.[84] Plaintiff's Complaint does not allege any facts suggesting

---

[79] Defs.' Reply Mem. Supp. Mot. to Dismiss [Doc. No. 9] at 4.

[80] Pl.'s Mem. Opp. Mot. to Dismiss [Doc. No. 6] at 2; Compl. ¶ 23 ("[T]he company always enjoy[s] the second-read of their attorneys.").

[81] *See, e.g.*, *Tannenbaum v. Foerster*, 648 F. Supp. 1300, 1303 (E.D. Wis. 1986) (applying identical Wisconsin law based on Restatement (Second) of Torts).

[82] Plaintiff argues that the existence of a conditional privilege is a question for the trier of fact, citing *Chamberlin v. 101 Realty, Inc.*, 626 F. Supp. 865, 871 (D.N.H. 1985), and *Pickering v. Frink*, 461 A.2d 117, 119 (N.H. 1983). This appears to be true under New Hampshire law, which applied in both *Chamberlin* and *Pickering*. Pennsylvania and New Jersey law, however, hold unambiguously that the existence of a conditional privilege is a question of law. *Feggans*, 677 A.2d at 777 (N.J.) ("Whether a defendant is entitled to the privilege is a question of law. Whether there has been an abuse of such privilege entitling the plaintiff to prevail is a question for the jury."); *Rankin v. Phillippe*, 211 A.2d 56, 58 (Pa. Super. Ct. 1965) ("The court determines whether the occasion upon which the [defendants] published the defamatory matter was privileged.").

[83] *Foster v. UPMC So. Side Hosp.*, 2 A.3d 655, 665 (Pa. Super. Ct. 2010).

[84] 42 Pa. Cons. Stat. § 8343(a)(7); *Foster*, 2 A.3d at 665; *Den Hollander v. Township of Franklin*, No. 190-09, 2010 N.J. Super. LEXIS 2314, at *13–15 (N.J. Super. Ct. Law Div. Jan. 22, 2010) (granting motion to dismiss because potentially defamatory statements were on legitimate matters of public interest and as such "enjoy[ed] a qualified privilege" requiring plaintiff to plead malice in the complaint); 53 C.J.S. *Libel and Slander; Injurious Falsehood* § 206 (2019) ("While privilege is an affirmative defense in a defamation action, and thus generally does not need to be

12

that the privilege was abused, "which is fatal to the viability of [her] cause of action."[85] As a result, Plaintiff's claim for defamation will be dismissed without prejudice.

## IV. CONCLUSION

Plaintiff's breach-of-contract claim may proceed. Because her claims are in essence contractual, however, Plaintiff's fraud claim will be dismissed with prejudice. Finally, Plaintiff's defamation claim will be dismissed without prejudice. An appropriate order follows.

---

negated in the complaint, if a qualified privilege exists, it is necessary to allege that the utterance was made with actual malice . . . A conclusory allegation of actual malice is not sufficient.").

[85] *Foster*, 2 A.3d at 665.